# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF TEXAS

# HOUSTON DIVISION

United States Courts
Southern District of Texas
F I L E D

JUL 1 5 2025

Nathan Ochsner, Clerk of Court

**John Ray
Alaniz,**

**Legal Advocate, for Margot
Alaniz,**

**Plaintiff,**

v.

Civil **Action No.**

**Crystal Stalder, LNFA
Administrator,**

**Diane** Hill, **Director of
Nursing,**

**Julianne McCoy,
Ombudsman II,**

**Jamie Moon, Corporate Compliance
Officer,**

**Ridgewood Rehabilitation & Healthcare
Center,**

**Deputy C. Johnson
(ID#2793)**

**Deputy Herrera
(ID#6078)**

**Defendants.**

**AFFIRMATION OF TRUTH**

1. **I affirm that I have made every effort to obtain lawful access to the care, records, and well-being of my mother, Margot Alaniz, and have been met with retaliation** for **invoking those** rights.

2. **I affirm that staff at Ridgewood Rehabilitation failed to treat Margot's** ongoing **fungal infection and neglected essential elder care duties including maintenance, safety, and hygiene.**

3. I affirm **that I, John Ray Alaniz, made multiple calls requesting accommodations** due to my diagnosed dyslexia and ADD, and those **accommodations were denied**, violating the ADA.

   4. **I affirm that recordings, both audio and visual, relevant to the medical** care and **interactions involving Margot Alaniz have been either withheld** or **denied access to, in violation of HIPAA and federal elder rights.**

5. I affirm that **I have contacted and spoken with facility staff, including Crystal Stalder, Diane Hill, Julianne McCoy, and Jamie Moon, regarding these matters and was given no effective remedy.**

6. I affirm that calls were made to Adult Protective Services, the Area Agency on Aging, and local authorities without remedy or action taken, **demonstrating a system-wide failure to protect an elderly patient.**

**Executed this 15 day**
**July 2025.**

**John** Ray
Alaniz
**Legal Advocate & POA for Margot**
**Alaniz**

**John Ray Alaniz,**
**For Margot Alaniz, Petitioner,**

v.

Ridgewood Rehabilitation **& Healthcare** Center; Crystal Stalder **(Administrator);**

Jamie Moon (Compliance Officer); Deputy **C. Johnson (ID#** 2793**)**; Deputy **Herrera** (ID# **6078); and** Related **Parties,**
**Respondent**

## I. RELIEF SOUGHT

**Petitioner seeks an emergency writ of mandamus or prohibition ordering**:

1. Immediate **federal intervention to stop continued civil rights violations, elder**
   abuse, and unlawful retaliation.

**2. An** investigation **into the** misuse of color of law, **ADA** discrimination, and **Medicaid/**Medicare **fraudcommitted by a federally funded nursing facility in violation of 42 U.S.C. § 1983, 18 U.S.C. § 242, and HIPAA.**

3. Enforcement of protections **under federal law for both elder Margot Alaniz and her legal representatives (POA and advocate John Ray Alaniz)**.

**4. Prohibition** against further enforcement of **unlawful "no-**recording" **policies, retaliatory** trespass warnings, and denial of access to family members.

## II. JURISDICTION

**This Court has original jurisdiction under:**

U.S. Const. **Art.** III §
2
**SCOTUS** Rule **20 (extraordinary federal intervention required when lower courts or public actors exceed their lawful jurisdiction and cause irreparable harm).**

## III. PARTIES

**Petitioner: John Ray Alaniz, legal advocate, son for Margot Alaniz (a Medicare/Medicaid beneficiary).**
Respondents:
- O **Ridgewood Rehabilitation & Healthcare Center**
- **Crystal Stalder, Administrator Jamie Moon, Corporate Compliance Officer**

**Deputy C. Johnson, Montgomery County Sheriff's Office Deputy Herrera, Montgomery County Sheriff's Office Diane Hill, RN Regional QA Nurse and Infection Control**

## IV. FACTUAL BACKGROUND

**Petitioner has documented:**
**Unlawful hidden** surveillance **in Margot Alaniz's room** without **consent**. John Ray Alaniz **Denial of disability** accommodations **despite documented disabilities (ADD, dyslexia, hearing loss)**.
Retaliation **via** a trespass warning **after attempting to advocate for his mother's safety**.

Suppression **of** protected **First Amendment activity under false claims of** HIPAA violations.

**Suppression of** legal **complaint** filings **by** law **enforcement (violating Texas CCP Art. 2.13)**.

Use of private **internal** policies to **override federal law and block** access **to medical records and family visitation**.

**Full audio transcripts, legal requests, and refusal responses are attached as exhibits.**

## V. CONSTITUTIONAL AND STATUTORY VIOLATIONS

**Respondents have violated**:

U.S. Const. **Amend.** I, **IV, V, XIV (Speech**, **Privacy**, **Due Process, Equal Protection)**

42 **U.S.C.** § 1983 - **Civil Rights Deprivation**

18 U.S.C. § 242 - **Deprivation of Rights Under Color of Law**

Americans **with** Disabilities **Act (Title** II & III)

**HIPAA 45** CFR § 164.524 - **Right of Access to Records**

42 U.S.C. § 1395i-**3(c)** – **Medicare Resident Rights**

Texas Penal **Code** § 39.03, § 36.06, § **37.09**

Texas **Administrative Code** § 554.403**(b)** – **Record Access**

Texas Health & **Safety Code** § 242.501

## VI. GROUNDS FOR EMERGENCY RELIEF

**Irreparable harm to** both **a disabled elder and her ADA-protected son/legal** advocate.

Unlawful surveillance and privacy violations.

**Ongoing retaliation against protected conduct**.

Suppression of legal **oversight** and denial of **due** process.

**Fraudulent** misrepresentation of facility's **authority over federal protections**. **Public funding being** misused **through fraud** and concealment.

## VII. PRAYER FOR RELIEF

**Petitioner respectfully requests that this Court:**

1. **Grant this emergency writ to halt all retaliation and restore access to Margot Alaniz by her family and legal representatives**.

2. Order **the** immediate preservation and disclosure of all surveillance footage, **documentation, and medical records**.

3. Refer **the** matter for **federal investigation, including to DOJ Civil Rights Division and CMS**.

4. **Declare** all retaliatory policies and trespass warnings void **and** unconstitutional.

5. **Grant** any other **relief** deemed just and proper **under the All** Writs **Act** and this **Court's** supervisory power.

## VIII. AFFIDAVIT & VERIFICATION

**I, John Ray Alaniz, under penalty of perjury, affirm that the facts and claims presented herein are true to the best of my knowledge. I have attached all available transcripts, evidence, and formal records request attempts.**

## IX. ATTACHMENTS

1/7/2025

# AUD-20250707-WA0001


AFFirmation oF Truth #1

2025-07-07 10:52:52

This is Kaylee. Hey, Kaylee. Can I speak to Crystal? Or whoever, because they said that we're not allowed back in the facility until we talk to management. So we need to talk to somebody. Can I speak to Dennis? Is he in there? Give me a brief hold, and let me go run back there and see if she's in there. Tell them it's Ray Alanis wanting to know about a meeting, and she needs to talk to me soon instead of holding us up.

Give me one second, let me put you on a brief hold, and let me go ask her. What did she say her name was? Kaylee or something like that. I consent to this conversation. I consent to this conversation being recorded. Yes, sir. Let me transfer you back to Ms. Crystal. Give me one second. Okay.

Crystal? Yeah, Crystal. This is Ray Alanese. I consent to this conversation being recorded. And I want to know exactly when are you going to have a meeting this morning? Good morning. So I know we have a care plan meeting scheduled for later this week. We can keep that meeting. This is Mrs. Alanese's spouse, correct? Both of us. Okay.

And my son's here. And my son's here, John Ray. And my mother. So here's the thing. I am getting… numerous complaints from staff that your son is being aggressive with them, invading their personal space, speaking aggressively, recording them, taking pictures of them, and, just overall disruptive behavior. By any means, we are not perfect.

We make mistakes. Let me finish, please. Go ahead. We make mistakes on our end, and we're happy to address any complaints or concerns you have, but we also have to be mindful that we are, myself, you, your son, we're guests in residents' homes. This is a home-like environment for our residents. My nurses are using words that they don't feel safe around your son, and I can't keep getting these calls every weekend when y'all are picking them up.

So, going forward, he… Y'all are welcome to come back into the facility, but if I get another complaint about aggressive or disruptive behavior, we're going to have to trespass whoever is acting that way, and they're not going to be allowed in the building. Okay, it's now my turn. Okay, Sunday, they told me we're not allowed. Did you authorize that? I told them that Mr. Alaniz, the son, who the complaint was about, was not allowed back in the building until I had an opportunity to meet with him on Monday.

That is not what the nurse told me. They said Margo is not allowed back until Monday.

her. I called back to confirm it, and she told us that you authorized that us not to show
back up with my mother. Until Monday, like we're recording this conversation now.

We told you we are. So your conflict of stories are going back and forth, and that's why
we're angry. I just want to talk to authority, and this is my right, my federal and my
constitutional rights, to talk to authority about my mother when you have fiduciary rule
holding on taking care of my mother. And also, wait a minute. Wait a minute. You're not
letting us finish. You didn't let us finish. Listen. You didn't let us finish. You're not letting
us finish. I'm not letting us finish.

conversation going back and forth the issue is their continuous disruptive behavior and
aggressive behavior verbally and they are saying you're invading their physical space my
staff and the residents need to feel safe okay unfortunately i am not available to speak to
families 24 7 that is why i have managers in place the charges in the building are the
authority when management is not available okay we're available for true hours it's not
realistic.

that we be called for every single thing 24 7 that's not sustainable what is your human
being what is the rules and regulations what are the rules and regulations by the state uh
by the state it says that somebody has to be there with authority wait a minute and so
you don't follow them let me let me talk we are not i can't go over every single one of
them with you okay, But I assure you, we have a charge-melding able to mitigate issues,
and if they need to escalate it, they can escalate it.

Just because you say you want to talk to the administrator or DON after hours, after
we're gone, doesn't mean that we're going to jump and get on the phone. It depends on
the issue. A non-emergent will address it the next day. If it is emergent, we will follow our
chain of command to address the issue in the appropriate manner. But the charge are in
charge when we're not in the building. It's in the title of their job. Okay, it's my turn to talk
now, okay?

Because you kept interrupting because you wanted to say your statement. You said
Medicare, you are Medicare, Medicaid. You have certain regulations that you have to
uphold. You are not doing this. Who am I speaking to? I am the... I am the husband. It
doesn't matter who it speaks to. We both have the same power. And you have been
interrupting us, and you have not completed your job. As far as that person that night
said, hey, I am the charge nurse.

I am the authority, but I have no authority. And I said, well, let me speak to somebody
with authority. And then she goes, well, no. And I said, okay, what we want is we want
that you said that this item is broken or recorded, one or the other. And she was getting
angry. She goes, no, I'm not going to do that. I'm not going to do that. And then she said,
but I don't have no power. And I said, all you have to say or write it down that it was

recording, as a matter of fact. So you could ask her to give you a written accountability of what she said. I want to hear it myself. Verbatim. And then we'll play you our tape, okay? I will be happy to interview the nurse. The Pure Wix is provided by you guys.

It is something that y'all wanted, and we are happy to... It's not that we want it. It's that it was medically prescribed to her. That's something that she's... It's a necessity. We need to sit down and discuss the Pure Wix, whether or not we're going to continue to be able to accommodate that system. You can't deny it. That's a federal lawsuit right there waiting to happen. That's okay. But listen, we'll sit down with a nurse and talk about it. The agreement that was made upon admission is that you would provide supplies for the...

We don't, we, that is not something as this facility that we provide. The, the also, but you also need to understand that, but if you break it, normal wear and tear, things happen in a facility. That's not normal wear and tear. Have you seen that canister? That's not normal wear and tear. They broke it. But listen, accidents happen, but what needs to happen is y'all need to remain calm in.

the building. You're the only family that I get called about repeatedly that you're losing your temper and becoming disruptive. I had said, I have not. The nurses are using words that they are in fear of their lives. They're worried that they're, you're going to strike them. They're scared of you. I haven't used any vulgarities. All I, all I asked for is to speak to authority. All I asked to speak to authority. And like right now, like you're doing to me and you're talking over these other. talk over and I said, I just want to talk to authority. If you can't do anything, then don't.

come here. No, I mean, I don't want to be around you. What I'm saying to you is the nurses are the authority in the building to replace or something like that. If it's hours or on a holiday and we're not in the building, the nurses have the discretion on whether or not they need to escalate it up or leave us a note to handle next business day. Okay. Okay. Wait, wait. It was not an emergency that we needed to report to the building after hours. We have true emergencies that we're on.

call for. Falls, changes of condition, facility maintenance failures. A broken canister is not something that the nurses did the right thing. I think we all need to respect each other and remain calm. Okay. What I'm saying is y'all are welcome to come back into the facility. However, if you, If you become disruptive, if you invade a nurse's or any employee or resident's personal space, if you photograph people against their will, if you attempt to snatch anything from an employee,

you will be not only removed from the facility, you will be issued a trespass, and you will not be able to allow to enter the building again. Ms. Alaniz, we have no issues with her. She is a wonderful resident. She can stay, but you will not be allowed on the property if

address those in a calm, controlled environment. I'm not getting a complete deal on this.

We're not getting a complete deal on this because we asked her just to – it could have ended real quick. All we said is, look, just say that it broke. I knew she couldn't get up. She lied to us and said, oh, I got it on autopilot. And then it was not in, and then she'd come back, she'd say, well, it's not here. I'd say, well, all I want to say is just in writing, put down, you know, that you broke it here, and, you know, just so we have it documented.

Yeah, we're not going to do that. We can't stop and do that and interfere with patient care at every little thing. You reported it, and we will handle it. Okay, but wait, wait. It was the director of nursing on what we need to do, but your expectations have to be realistic. You're not letting us talk. Please, please. We respected you, and we waited until you finished, and we even asked you, are you done? And now you keep on talking over us. That's what's the problem here is that you don't listen to people, okay? So now whenever we have these issues, like they broke my mom's clock.

We have a missing plug that they stole from us. Her clothes is gone. Every time we go back to do something, then we go to the office the next day, and nobody knows. They don't know anything about it. So how? How are we going to have accountability and moving forward to know, hey, but if you say we're not taking time to do that, whatever, and they don't have authority to do anything about it, how are we making documentation? Either I have to have something written, I have to have it recorded, I have to have something tangible so I can come back to you guys and say, hey, this is a problem. This is what is you. And they acknowledge that this happened.

Okay. So what I need from you is we have a care plan meeting, I believe, on Thursday. Please make a list of anything that is lost, missing, broken that you feel the facility needs to address. Provide that list to me, and we will go through it and determine if the facility is going to be able to replace it or not, and we'll move forward from there. Okay? No. We have a meeting on Wednesday, and there's a long list. Wait a minute.

There's a long list I have that y'all have not accomplished from the previous meeting. Y'all have not accomplished. There's many items on the list. Which is really in violation of city law, federal law, and constitutional law. And I plan to bring this up, and you need to take care of it. And whoever you check and see, and we got it recorded, whoever that nurse was on Sunday said, we're not allowed to go. You're still getting paid for that day, and we got to pay somebody to take care of Margo over here.

Because that person took it upon herself, and you said she has the authority, right? Okay, I am going to have to investigate that statement. That was not the directive I gave. The directive I gave was that Mrs. Alanis' son was not to enter the building again until Monday when I had an opportunity to speak with him. Okay, out of your words. So I can

date wrong on the care plan meeting.

So we have a meeting on Wednesday. What I need from you is to make a list of
everything. that's missing and that is broken that the facility you feel the facility is
responsible for and we can review it then we do have only 30 minutes for that meeting no
we don't yes sir it's a 30 minute meeting there's over 100 we talked to the people last
time and they said they were going to delegate dennis told us he was going to give us an
hour no we're giving you dennis does not have the authority to give an hour we have a
30 minute i have it i have that recorded too as well that he said he was going to give us
extra time sir i am telling you that i have 30 minutes.

for you on wednesday i have 80 something residents and each one is a loved one and i
have to divide my time between everybody care plan minutes are typically 15 minutes
long i'm giving you double the time okay so let's let's reconvene when we can get an
hour let's reconvene when we can get a whole hour is not productive because we keep
getting interrupted i'm telling you that i'm giving you 30 minutes of my time on
wednesday whatever if you want okay plenty of time if everybody is.

home and prepared for the meeting to review everything we need to review. We're not
going to continue to argue and go back and forth. So I think all parties need to cool off. If
you bring your list of items that need to be discussed, we will be ready for you and
prepared to sit down and I am prepared to replace anything that we have broken or lost,
but I need to have that communicated in a calm, controlled environment. So I'm not sure,
I don't have my calendar in front of me, but we'll be ready for you on Wednesday. Mrs.
Alaniz is more than welcome.

to return to the building today. You two are more than welcome to re-enter the building
today, just with the understanding that we have to be calm and in a home-like
environment. And if we get disruptive, nurses do not have to be recorded visually or
audibly with your phone if they do not want to be. And so... What is the law? What is the
law against that? Do you know the law against that? I cannot...

So you're telling me that you have more authority over the law? If the state law says that
I have entitlement to this right, and you're telling me that I don't have these entitlements,
these rights. Sir, I am also letting you know that this is private property, and I have the
right to tell you that you can't enter it if you're not going to be respectful and not be
disruptive. But you're open to it in public, correct? Are you open to the public? This is
private property, and I will have you trespassed if you become disruptive or the nurses
feel that they are in danger.

But that wasn't my question. My question is, are you open to the public, yes or no? Sir,
I'm not going to continue going back and forth with you. I'm going to terminate this
conversation now. I have told you, one, you can reenter the facility as long as you remain

Alaniz is welcome to come back at any time. And I will meet with you on 30 minutes on Wednesday, and I am asking that you please have a list of everything that you want to cover so that we can calmly and professionally go through it.

That is all I am willing to talk about at this time. This conversation is not productive any longer, so I'm going to go ahead and hang up the phone. Why don't you speak to that nurse on Sunday? All right, I will follow up with the nurse and clarify, and my apologies if there was a miscommunication. You were the only person that I said could not enter the building until Monday. I know, but she said we are not allowed and not to come until we know when the meeting is going to be Monday. Okay. So we're here waiting around, waiting for her.

This is my father, not me. It's my father, not me. My apologies for any miscommunications, but this conversation is now over. Please wait. Listen to my father. I'm not going to talk anymore. That's all right. We'll just go to sleep. Go ahead. Bye. Okay. Bye-bye. That was pretty heated.

7/9/25

# 07-07 Meeting: Patient Care Issues



AFFirmation oF Truth #2

2025-07-07 14:15:09

This is a mission. Oh, there's nobody in here. Do you want to tell her? I don't know. Will we tell her, I guess? Excuse me. I don't know if I'd tell you or not, but my mom's canister was broken for the peer wick. Who are you? I spoke to you on the phone about it. Okay, yeah. Okay. And then we left some applicators because we usually just use the one from the house, and we add on to those for her, and they're bone dry. There's nothing.

So it's probably the DON next door because she's over all clinical and nursing. Okay. Well, see, I mean, I just get conflicting feelings because, see, I come to them, and they're like, oh, you need to talk to somebody else, and then somebody else shows me to someone else, whatever, and then they say, oh, I'll document it. They say, I'll document it, and then, you know. I know nothing about peer wicks. I'm not a nurse. Okay. So that's why I'm directing you over there. Okay. Because they're gonna know better. Oh, but if we had a notation, I mean, you know. Yeah, but, yeah. Okay, we didn't push it away.

Okay, let me get a witness, please. Hold on one second. Okay. No. Okay, all right. We can go in the hallway in front of everybody. We care, I don't care. Yeah, there's her, there's Paige.

No, they're probably just visiting. No, we have to say we started. Just make it quick. What can I do for y'all? Two items. One thing is that we had some fuel wicks, extras, we always leave it in the drawer. They're not there no more. Okay. When did y'all leave them? Friday. Whenever the canister was broken. Okay, Friday y'all left them? Yeah. Okay. And then, you know, we come back and now. Okay. And then also the pads, the dryer pads.

They go under there, yeah. You need those? Y'all need those? I mean, they're not using them. So do y'all want them back? I mean, we want you to use them. We gave them to you and you said you're going to implement them. I said I was going to have Janice assess and then we'll see if she needs them. That's what I said. You said you were going to implement them. I mean, that's what you told us. So why did, there's no follow-up? We'll have a meeting on Wednesday. Okay. So I will find those things for you guys. Okay. Just put it in her drawer back there. Yeah, yeah, yeah. Okay. Because the bone nurse hasn't done anything. She still has a rash.

Yeah. No. Here? No, in the private. Okay. Well, she just got back today, so we'll have her check her out. Okay? I asked her, have you seen her? She said, well, I've seen her. I've seen her. I said, when? She said, oh, a week or two. Been a while. No, she assesses her

medications. Did you... Okay, we'll have a care plan meeting on Wednesday to go over all this.

So, your denier is to look at... I want to know something like that. Are you going to talk about it right now? Yes. We have time set up for just you guys. Okay. That's what the care plan meeting is. Okay. But only 30 minutes, though? Yes, sir. So, I mean, to condense everything and that, do you think we would be... Yeah. Because there's a multitude of issues that we have here, and we're to be... I'm trying to articulate my words correctly, for us to articulate, I mean, to get everything in there, and then also because, I mean, we're a little emotionally charged. Whatever with this, because it's our loved one, just like it would be if it was your mother and father or somebody that in this care home that we have the right to be, you know, feel this way, you know, and, you know, we're having continuous issues of, you know, health issues.

So we will discuss that on Wednesday, because this does have, we're right at shift change, and we have discussed some of these ongoing, and I've been working on them, so we will have this meeting on Wednesday. Okay. And I'll go try to find the other things. So is there a way that we can maybe potentially have a longer meeting? Because the last time, whenever I was talking to Dennis, remember, he promised us that we would have an extended time. So, but because he said, he said, he said it would be more like an hour, because I said, oh, because he's, y'all did extend it last time to 30 minutes.

Now we're having even more issues than before. So. I need to get this person out. Okay. I'm just saying right now. Okay. Dennis is in training. Okay. All right. So, we misspoke. We're already giving you an extended meeting by adding the extra 15 minutes. That's double the time. I'm sorry, I can't hear very good. It's double the time already with the extended meeting. Dennis is in training, so if he misspoke, I apologize. But 30 minutes, because, and what I want you to understand is we're not trying to be stingy with our time with you.

But there are almost 90 other patients here, and they have meetings scheduled and need our time. And in order for us to best care for them, we have to limit the time frames for these meetings. Okay, having said that, are you done speaking? Yes. Okay, so having said that, you're saying that we only have a limited time of 30 minutes exclusively, and that's it? Mm-hmm. Okay, so when we come to you with the other issues, like we're having today, and you're neglecting to deal with these issues because you have a multitude of other patients,

what is our recourse and what do we do to address these? These problems, because we're talking to you. Right. having issues we say I've sent you emails multiple emails I know but but, that's not what's the priority we just send somebody out 9-1-1 I have to triage every issue we have it's life or death so we have people that are severely ill I have

was it been since I gave you the email it's been months now right right I know you started off very well and I thought wow you because you're like give me time I got a list and you showed me a stack of paper you're like I'm getting rid of people I know wow she's like Trump we're gonna do things well we're moving forward and the same people are here the same people are having issues I'm telling you that they're having issues with these with these employees you, and you know threaten me you know with this stuff whatever and you know right now you guys are, talking to me calm you know and and we're in an environment where it's not.

threatening but they're like we had this attitude this task whatever I'm like hey you're talking loud I could talk loud too you know that's that's my staff at this point only because every weekend you come oh they tell me that you're threatening them am I threatened to you now no but that's a different situation I'm not gonna I have recordings I'm recording okay I would just because you we're not addressing you're deflecting and I'm not deflecting but what I'm saying is we have a meeting scheduled with you this.

week we are gonna sit down and give you 30 minutes of our undivided attention to address your issues I've asked you already to come prepared with exactly what you want to discuss so we can hit your items my issues have already been relayed to you so we only need to talk about your concerns but to stand here right now and to continue to go in circles and circles it's not going to be conducive to the conversation like I said I think it's better, if we all cool down, collect ourselves, and then reconvene. If you're unhappy with the outcome of the meeting at the end of the 30 minutes this week,

I will provide you the number to the state of Texas, the ombudsman, and the corporate office, and you can contact all of them and take it to the next level. Okay, and so I was clear, well, you were clear in the phone when you said I could not record in this area? No. Here's the thing. I'm just asking. If someone gives you their permission to record them, you can record them. But the staff does not want you recording them. I'm not giving you my permission to record me. Did you look up the law on that? No. Okay. But what I'm saying, sir, is...

Wait. I mean, you want to enforce things that you don't know nothing about the law. Sir, I'm going to ask... Okay, all right, please go ahead. Okay, okay. Yeah, I'm trying to have a conversation, but, you know, you're only your way, and that's it. So, all right, thank you. We got it.

# 07-09 Meeting: Admissions Agreement, Disability Accommodation, and Care Plan Discussion

*AFFirmaTion oF TruTh #3*

2025-07-09 12:29:37

Our contract, did you print that? Because we're in the process of moving, and I know I can find it, but it'll take me. The admissions? Huh? The admissions agreement? Yeah. Well, any contract that pertains to my mom, stay here. I can print the admissions agreement, yeah. Okay. Thank you. Okay. And then today will be like a short meeting, and then if we need to talk more, we'll probably reset another meeting. We can set another care plan. Yeah. Okay. Because I'm thinking we're not going to accomplish everything.

Yeah. If you would. Well, okay. Yeah, I guess because we're having a hard time because you say you only have 30 minutes. I understand your point of it, that you have other stuff, but it's been documented that I have a disability. Through Diane, I sent her an email saying that I do have a disability. It's ADD and a cognitive disability. My father has a hearing impairment, so we're asking for extended time. to help accommodate us through that.

This is the first I've been told about anything. Well, I mean, there's e-mails. I've got proof of e-mails. I'm just saying for me, today is not, we cannot extend the time today. 30 minutes is all we have. That's why we're saying that. We're going to document that in the short mail we have today. That way it's documented. Yeah, we'll have a care plan meeting form that you'll sign and everybody will sign today, and you have the ability to write whatever you like on there. Okay. All right. Thank you.

# AUD-20250710-WA0001



2025-07-10 17:25:47

Let me transfer you right away. Give me a second. Okay. I consent to this recording. No. Let me transfer you again, okay? Okay. This is Crystal.

Yeah, I consent to this recording. Hey, Crystal, this is Ray. Hi, Ray. Good timing. I have Diane, the DON, with me right now. Hey, I wanted to touch base with you on a couple things. Like I said, Ms. Alaniz is fine, but I got with my corporate office regarding the question about the audio and potential video recording. So basically, due to HIPAA concerns, we're not going to be able to do.

any recording out and about in the facility of staff. And I know your son wears the thing around his neck. He's not going to be able to have that in the building or utilize that in the building. Well, I'm here right now, and we're filing suit then. That is totally up to you. But that's what my corporate office compliance officer advised.

me to tell you. But I can give you her number if you're interested in speaking with her. Yes, go ahead. Okay. She did say that she tried to call you before, because I guess she got a message from you. But her number is 512. 4-8-2-8-2-4-2. And her name is? Jamie Moon.

Mills? Noons. Jamie Moon. Noon, like noon time? M-O-O-N. Oh, Moon. Okay. Yeah. Okay. So what happens, just so we have clarification, what happens when I do come back to the facility with that around my neck? You'll be asked to leave. And so you're going to restrict me or hold me back from my mother as a legal advocate for her?

So not if you're not recording the staff and other people around. So, but, I mean, whenever I'm having issues with the staff and I'm not getting documentations, what do I do? Because, see, we're having these issues where. The broken item was there, and I said, well, write it down on a piece of paper so you know that it was broken at the facility and not the house. Because who is that now? It becomes a situation of where did it get broken? I don't know it got broken there, you know?

At that time, you know, what it is, he's not going to be recording while he's walking around the facility. But if there is a question that needs to be answered about her care, that's the only time we will record. So the thing is about that is there's other conversations and other residents throughout the building, and we have to guarantee their privacy. So there's no way that you can be recording in a public or, you know, common area because if a resident wheels by and says something, they don't know that

Okay, my next question. And also, it is... The staff also have the right to say they don't want to be recorded. Okay. So let me ask this question. Are you guys open to the public, yes or no? I am not going to answer that question. Because are you open? It's a very simple question. Are you open to the public? If somebody randomly from the public comes inside, would you allow them in there?

Actually, not without validating who they are and what their purpose is here. A random family member or somebody, you know, you're open to the public. Anybody can come into the facility if they have money to stay there as a resident. As an advocate, you're open to the public. No, not anybody can come into the facility. This is private property. Our first and foremost priority is the protection of our staff and residents and their privacy, well-being, and safety.

So additionally... Okay. Ray, we have as the RP, has not exhibited any aggressive behavior at this time. So we're asking that when Ray is looked at as a responsible party. So all of our main communication is going to be between us and Mr. Ray. But for you, John, I've been also instructed by my corporate compliance officer that you need to have supervised visits until we can dial down the hostility.

and harassing nature of your demeanor. So when you come in, I need you to stay in the lobby area and we can bring your mom to you for a visit. But you just need to let us know when you're coming so we can arrange for that supervision during the week. So you're withholding my mother from me, access to my mother and her care? Because in the paperwork, we've said, even in the meetings. previous before that i am acting uh because before my father was working and so we have it documented.

that uh i am second in command if he's there i don't make any medical decisions like medications or anything like that but i am just as good as him you know for making decisions on her care we have that documentation already so are you saying that you're restricting my entrance to go over there to see her to to check up on her and to make make sure that she's okay you are more than welcome to come check up on her make sure that she's okay you're more than welcome to call and check in her you can attend the care plan meetings but in order to avoid the situation that.

we had last friday when you came in you need to let us know when you're coming and we need to make sure that somebody is available to to be to supervise because this way too if you're saying my staff is not being you, I can witness, but for now, you cannot go past the lobby door. You can come into the lobby, but not through the main double doors that go into the nurse's station. At this time, we'll bring your mom to you and allow you to visit with her out there.

And if things go well and everything becomes harmonious and we can all get along, because that is my ultimate goal, and, you know, we can reevaluate that situation. We just need to make sure that the staff is comfortable. I'm not going to say you can't come

want to do and you want to arrange a time to go down and check the room or something like that yourself, we just need to schedule it, and I'm happy to do that with you, okay?

I got a question, because... Well, we asked her to sign something that said it was broke. She said, I refuse. So I said, okay. I said, John, ask her to record it. You know, if I'm going to be there and something is wrong about her care, they should write it down. Right? They can write it down, but they're not obligated. Let me finish. Would you let me finish, please? Yes, sir.

Okay. After that, if I need to record it, I'll say, let's step over here where it's quiet. Quiet. Nobody's around. And you could say it into the recording. Okay. So the staff are not obligated to write anything down and give it to you in the moment. And I think they're hesitant because they don't know what is the correct protocol. And I'll educate them. But if something's broken or missing, you can, you're welcome to also send me an email or give it to me in writing in the moment so that it's documented on your end.

that makes you feel better, but the recording throughout the facility is not going to be permitted, and the staff have the right to say they don't want to be recorded and no longer want to be recorded. I, additionally, am no longer consenting to you recording conversations with me, okay? Okay. Okay, well then, you know, how does that, that's a total confliction of what we've been told from you before, because I've come in there before, and you said, this is a director.

of nursing issue, or that is a maintenance thing, or there's the other girl with the blonde hair with the big glasses, I've gone in there and talked to her, and I tried to talk to her about missing items, I still have that missing plug. We have the mama's broken, what you call it, clock thing that's broken. I mean, there's been multiple issues, and they're missing clothes. still I mean uh we haven't nobody's addressed that there's a lot of things that just don't get.

uh dealt with because y'all say oh we'll come in on Monday or do this and then nobody knows anything about it so there's no documentation there's no nothing tangible uh and everybody wants to play ignorant and and also we have not had your email address that there's no they say there's no way of contacting her you know if we could have had that we could have emailed you say this is the problem and it was up to you if you wanted to answer or not but at least we know we could relay a problem but but we were blocked from that and also that that time when the incident.

when they called the cops they said that they were on the phone with you and that you gave the order to call the cops and I said well let me speak to her and they said no she don't want to speak to you okay so um with that being said you have the number to the corporate office I've gone over all of our um, Our requirements at this time, I can tell you my email address if you like. I also have business cards at the front that have my email address on them

My email is admin at Ridgewood at the Woodlands dot com. That's A-D-M-I-N Ridgewood at the Woodlands dot com. So it's the same as the D-O-N's email address, I believe, that you have. Oh, wait, no, I think Diane's is an M-S-F-T-X, though. But you're welcome to reach out to me any time. But at this time, I think it's best if we reconvene at our scheduled care plan meeting next week.

If you have any concerns that come up between now and then, please reach out. But just understand we're no longer doing the recorded conversations or recording in the building. One more question. Did you tell your corporate office people? that I have a documented disability? I did not. Okay, well, see, because that... I told them that you reported a disability to me, but I did not go into detail with it because, again, I don't know that much about...

Diane's there in her email. Okay, Diane's there, and she can validate. The email says it there, that I have... Okay, so... Wait, wait. I'm not done talking. Please. No, we're done with the conversation. You're done with the conversation, so you don't want to listen to it at all. I've communicated everything to you, and we're starting to do the talking around in circles again and not getting anywhere. No, you don't want to know the law. You don't want to persecute without knowing the actual laws and regulations.

State law trumps policy any time. Does it not? Sir, I'm not going to get into a conversation with you about laws and regulations. Regulations. My priority is the administrator of this building and the safety of my residents and staff. Those groups of people are my number ones. And then my family members come through. That's just how it has to be. That's how I am as an administrator. I try my best to follow the line of the law, but I am not perfect. If you have any other concerns, please reach out to Jamie at corporate. Otherwise, if you have concerns about miscellany or need something immediate, feel free to reach out to me. But I'm going to go ahead and terminate this conversation.

Now, I hope you guys have a great afternoon. We do. We're going to have a great one.

John Ray Alaniz
Son & Advocate for Margot Alaniz (ADD, Dyslexia, Moderate Hearing Loss)
Ray Alaniz
Durable Power of Attorney for Margot Alaniz
18953 Oakridge Dr • Cleveland, TX 77328
Phone: (903) 576-5060 • 2017johnrayalaniz@gmail.com

Date: July 14, 2025


---

To:
Crystal Stalder, LNFA — Administrator
Ridgewood Rehabilitation & Healthcare Center
10450 Gosling Road • The Woodlands, TX 77381
P: (281) 296-9234 • F: (281) 298-6212 • admin@ridgewoodatthewoodlands.com

CC:
Julianne McCoy, Ombudsman II
Houston-Galveston Area Agency on Aging
3555 Timmons Lane, Suite 120 • Houston, TX 77027
Direct: (832) 544-4769 • Office: (713) 627-3200
Julianne.McCoy@h-gac.com

Jamie Moon
Corporate Compliance Officer — MSSTX / Ridgewood
📞 (254) 702-1929 • 📞 (512) 482-8242
✉ jamie@msstx.us


---

RE: Formal Legal Records Request — Margot Alaniz — URGENT

Dear Ms. Stalder,

This is a formal, expanded legal records request concerning Margot Alaniz, a current Medicare and Medicaid beneficiary at Ridgewood Rehabilitation & Healthcare Center.

A prior written request was hand-delivered to you on Wednesday, July 9, 2025, by myself, John Ray Alaniz, and Ray Alaniz, the Durable Power of Attorney for Margot. The form you provided in response was unreasonably limited in scope. We now assert our full rights under federal and Texas law and demand complete access to all legally required records and documentation.

---

◆ RECORDS YOU MUST IMMEDIATELY PRODUCE

1. Admission Agreement & Financial Contract

2. Plan of Care (POC) and care coordination documentation

3. Complete Medical Records, including nursing, therapy, physician, and daily care notes

4. Medication Administration Records (MARs)

5. Incident Reports, Injury/Wound Logs, Internal Investigations

6. Fall Logs, Call-Light Logs, and Safety Monitoring Notes

7. Discharge Summary, including room checkout forms, personal effects, staff sign-offs

8. All Internal Notes, Staff Communications, or Documentation referencing John or Margot Alaniz

9. Visitor Logs, Staff Communication Records, and Contact Logs with family or POA

10. All Written or Electronic Communications referencing the Alaniz family

11. Facility Policy Documents, including the "No Recording" policy

12. All Documentation Related to the Trespass Warning issued to John Ray Alaniz

13. Facility Licensure, CMS Certification, and Medicaid/Medicare Participation Agreements

**14. Corporate Ownership & Management Disclosures**

**15. Environmental Safety & Maintenance Documentation, including:**

All logs, requests, and service tickets related to Margot's bed, wall outlets, call-light system, electrical issues, or safety devices in her room

Dates of complaint, assigned personnel, status updates, and completion proof

Any facility-wide or room-specific maintenance reports or safety evaluations

**16. Video Surveillance & Electronic Monitoring Records, including:**

Policies, consent forms, or documents tied to surveillance in Margot's room or nearby hallways

Retention logs or internal reviews of any security footage involving her or her advocate

Footage logs or requests made by staff to monitor/review those areas

**17. Medicare / Medicaid Related Files, including:**

All documentation submitted to CMS or HHSC on behalf of Margot Alaniz (e.g., MDS assessments, billing logs, care certifications, prior authorizations)

All internal and external communications regarding Medicaid/Medicare services provided to Margot

All notes, reports, or documents used to justify or document government reimbursements

—

◆ **THIS REQUEST IS FULLY LEGALLY PROTECTED**

Your facility receives federal funds through Medicare and Medicaid. Therefore, Ridgewood is not exempt from public accountability. You are bound by:

42 C.F.R. § 483.10(g)(2) – Right to access all records within 24 hours, copies within 2 business days

Texas Administrative Code § 554.403(b) – Right of legal representatives to access correspondence, logs, and internal notes

Texas Health & Safety Code § 242.501 – Denial of access is a criminal offense

42 U.S.C. § 1395i-3(c) – Requires full cooperation from all Medicare/Medicaid-funded facilities

Texas Government Code § 242.846 – Grants right to obtain surveillance and monitoring records

HIPAA 45 CFR § 164.524 – Requires disclosure of health records to authorized representatives

> Delay, concealment, destruction, or retaliation is unlawful and may result in civil penalties, license revocation, administrative fines, or criminal charges.

---

◆ COMPLIANCE DEADLINE – 3 BUSINESS DAYS

Because this request supports imminent legal action, we require all documents to be produced no later than three (3) business days from the date of this notice. If additional time is needed, a written explanation and specific timeline must be provided immediately.

---

◆ FAILURE TO COMPLY WILL RESULT IN ESCALATION TO:

Texas Health & Human Services Commission (HHSC)

Centers for Medicare & Medicaid Services (CMS)

Texas Attorney General – Medicaid Fraud Control Unit & Elder Abuse Division

Civil and federal courts for enforcement, injunctions, and damages

---

◆ **CLOSING STATEMENT**

This request is made in lawful pursuit of our duty to protect our mother's health, dignity, and legal rights. Any effort to intimidate, delay, or deflect will be treated as further evidence of wrongdoing. We expect your full cooperation and transparency.

**Respectfully,**
**John Ray Alaniz**
**Son & Legal Advocate for Margot Alaniz**
📞 (903) 576-5060 • ✉ 2017johnrayalaniz@gmail.com

**Ray Alaniz**
**Durable Power of Attorney**
📞 (361) 455-2136 • ✉ rayalaniz@sbcglobal.net

---

- 
- 
- 
-

 Gmail

## Letter to police officer
1 message

**John Alaniz** <2017johnrayalaniz@gmail.com>
To: Ray Alaniz <rayalaniz@sbcglobal.net>

Fri, Jul 11, 2025 at 12:33 PM

TO: Peace Officer / Law Enforcement Official
RE: Request to File a Criminal Complaint Against Ridgewood Rehabilitation and Healthcare Center and Administrator Crystal Stadder

Date: [Insert Date]
Presented by:
John Ray Alaniz — Advocate and Family Member (Disability: ADD, Dyslexia)
📞 (903) 576-5060 |  2017johnrayalaniz@gmail.com
Address: 18953 Oakridge Dr, Cleveland, TX 77328
On behalf of my mother, Margot Alaniz, a resident at:
Ridgewood Rehabilitation and Healthcare Center
10450 Gosling Road, The Woodlands, TX 77381

---

OFFICER, THIS IS A FORMAL REQUEST FOR YOU TO:

1. Take a written report of the criminal and civil violations committed by staff at Ridgewood.

2. Recognize that the involved parties are using color of law to deprive my mother and me of civil rights protected by the Constitution, the Americans with Disabilities Act (ADA), and Texas law.

3. Uphold your legal duty as a public servant to protect against unlawful acts by public accommodations receiving federal funds.

---

I. THE SITUATION:

I am the son and legal advocate of Margot Alaniz, a vulnerable adult residing at Ridgewood Rehabilitation and Healthcare Center.
My father, Ray Alaniz, is the Durable Power of Attorney. I assist him in ensuring my mother's rights, safety, and medical needs are protected.

Despite repeated attempts to address medical neglect, broken property, and administrative failures, I have been:

Threatened with criminal trespass for entering a facility where my mother resides.

Denied access to monitor or document her care, in direct violation of her rights and my rights as a family member and ADA advocate.

Prevented from recording or documenting issues of neglect, under false pretense of HIPAA.

Retaliated against, including being falsely portrayed as hostile.

Denied disability accommodations despite my documented cognitive impairment (ADD, dyslexia).

## II. RIDGEWOOD IS NOT PRIVATE UNDER THE LAW

Although Ridgewood claims it is "private property," it is a public accommodation under federal law, and receives federal Medicare and Medicaid funds.
Therefore, Ridgewood and its staff are legally bound to uphold public rights and cannot use private property claims to block:

Lawful entry

Family visitation

Documenting or reporting abuse/neglect

> Black's Law Dictionary (11th Ed.) defines a "Public Accommodation" as:
"A facility open to the public that must comply with anti-discrimination and access laws."

—

## III. VIOLATIONS COMMITTED BY RIDGEWOOD AND ADMINISTRATOR CRYSTAL STADDER

1. Violation of ADA Title II & III – Denying reasonable accommodations for disability (e.g., recording for memory aid).

2. Violation of Texas Human Resources Code §121.003(c) – Prohibiting disability access in public accommodations.

3. Violation of Texas Penal Code §39.03 – Official Oppression: Abuse of power by a person acting under color of law.

4. Violation of Texas Health & Safety Code §242.133 – Retaliating against a family member advocating for a resident.

5. Violation of Civil Rights (42 U.S.C. §1983) – Deprivation of rights by a party acting under color of state law.

6. Violation of 18 U.S.C. §242 (Color of Law) – Threatening trespass/arrest to suppress civil liberties.

7. Violation of the U.S. Constitution:

1st Amendment – Right to petition and speak on behalf of my mother.

5th & 14th Amendments – Due process violations in blocking visitation.

8. Violation of Texas Constitution, Article I:

Sec. 8 – Freedom of Speech

Sec. 9 – Security of person & property

Sec. 19 – Due course of law

Sec. 27 – Right to petition the government

## IV. MY RIGHTS TO RECORD AND DOCUMENT

Texas Penal Code §16.02(c)(4): Texas is a one-party consent state. I may legally record any conversation I am a party to.

HIPAA protects only the release of another's health information, not recording of one's own experiences or documenting care issues.

Denying my right to record my own interactions, especially as a disability accommodation, is discriminatory and illegal.

---

## V. YOUR DUTY AS A PEACE OFFICER

You, as a law enforcement officer, have a legal obligation to accept a report when:

A resident or family member is being denied civil or disability rights

A business receiving federal funds is operating under color of law

There is reasonable suspicion of retaliation, neglect, or abuse

A public accommodation is using false claims to suppress legal rights

> Texas Code of Criminal Procedure Art. 2.13 – Duties of a Peace Officer:
It is the duty of every peace officer to preserve the peace, enforce laws, and "execute all lawful process issued to the officer."

I am requesting:

A full incident report

A written record noting my allegations against Ridgewood

A statement documenting the threat of arrest, trespass, and denial of access to my disabled mother

If you refuse to take this report, I request your name, badge number, and written justification so I may file a complaint with your department, the sheriff's office, the Texas Commission on Law Enforcement (TCOLE), and the U.S. Department of Justice.

---

## VI. CONTACT INFORMATION FOR OFFICIALS INVOLVED

Crystal Stadder, LNFA – Administrator
📞 (281) 296-9234 | admin@ridgewoodatthewoodlands.com

Jamie Moon – Corporate Compliance
📞 (512) 482-8242

Julianne McCoy – Texas Ombudsman (Houston Region)
📞 (832) 544-4769 | jmccoy@h-gac.com

Conclusion and Affirmation

I am acting within my constitutional and legal rights. This facility is operating in violation of multiple laws and using false legal pretenses to deprive my mother and me of protected rights.

I respectfully ask that you:

Accept this report

Document my statement

Begin the process of accountability and enforcement

Failure to act may constitute official misconduct and will be escalated appropriately.

Respectfully,
John Ray Alaniz
Advocate for Margot Alaniz
📞 (903) 576-5060 |    2017johnrayalaniz@gmail.com

M Gmail

John Alaniz <2017johnrayalaniz@gmail.com>

---

**(no subject)**
1 message

---

**John Alaniz** <2017johnrayalaniz@gmail.com>                                    Fri, Jul 11, 2025 at 12:44 PM
To: Ray Alaniz <rayalaniz@sbcglobal.net>

TO: RESPONDING LAW ENFORCEMENT OFFICER
FROM: John Ray Alaniz, Disability Advocate and Family Member
📞 (903) 576-5060 |    2017johnrayalaniz@gmail.com
RE: Request to File Report – Civil Rights and Disability Violations
Location: Ridgewood Rehabilitation & Healthcare Center
Address: 10450 Gosling Rd, The Woodlands, TX 77381

---

✒ I Am Requesting That You:

Take a formal police report regarding Crystal Stadder, the administrator of this facility.

Record my statement and evidence of civil rights violations, retaliation, and disability-based discrimination.

Document that I am being threatened with trespass/arrest for legally visiting and advocating for my mother.

---

☽ What the Law Says:

This facility receives Medicare and Medicaid funding. That makes it a public accommodation under federal law (ADA and Civil Rights Act). Crystal Stadder is a state-licensed official operating under color of law.

She has:

Denied me access to my mother without legal cause.

Threatened to call law enforcement to intimidate me.

Retaliated against me for documenting and speaking up about her care.

Refused to accommodate my documented disability (ADD and dyslexia).

---

● Laws Violated by Crystal Stadder & Ridgewood:

Texas Penal Code § 39.03 – Official Oppression

42 U.S.C. § 1983 – Civil Rights Violation

18 U.S.C. § 242 – Color of Law Deprivation

ADA Title II & III – Disability Discrimination

Texas Human Resources Code §121.003 – Denial of Public Access

HIPAA does NOT prevent me from recording my own experiences

---

☑ Your Duty as an Officer:

Texas Code of Criminal Procedure Art. 2.13 — Requires you to take my statement and preserve the peace.

You are not obligated to remove me unless I pose a threat (which I do not).

This is not a private matter — this is public interest and protected by federal law.

---

I Have:

Audio recordings of threats and retaliation.

Proof of my disability.

A legal right to advocate for my mother under state and federal law.

I am asking you to:

Take a report.

Preserve the evidence.

Forward it to your supervisor or the DA for review.

---

Respectfully,
John Ray Alaniz
Advocate for Margot Alaniz
Durable POA: Ray Alaniz (Father)
📞 (903) 576-5060

---

✉ admin@ridgewoodatthewoodlands.com

2. Deputy C. Johnson (ID# 2793)
Montgomery County Sheriff's Office
Refused to file a criminal complaint despite evidence
Issued a trespass warning under questionable authority

3. Julianne McCoy
Ombudsman II – Houston-Galveston Area Council
📞 (832) 544-4769 | ✉ Julianne.McCoy@h-gac.com
3555 Timmons Lane Ste. 120, Houston, TX 77027
Observed facility conduct and my advocacy efforts

—

Request for Immediate Action:

1. Accept and file a criminal complaint against Crystal Stadder and the Ridgewood
facility.

2. Generate an incident report under Case #25A210727 that reflects the full account of
events, threats, and evidence I provided.

3. Investigate Deputy C. Johnson for failure to uphold his duties under Art. 2.13 CCP
and potential bias or dereliction.

4. Confirm whether the trespass warning issued was lawful, considering the ADA and
civil rights implications.

5. Forward all documentation and evidence for review by:

Montgomery County District Attorney

Texas Commission on Law Enforcement (TCOLE)

U.S. Department of Justice Civil Rights Division

---

## Conclusion and Affirmation:

I am acting within my legal rights as an ADA-protected individual and an advocate for a disabled elder under Medicare-funded care. I expect your department to follow all lawful procedures and provide me with documentation confirming this report.

Failure to act on this complaint will be formally escalated through TCOLE, DOJ, State Ombudsman, and legal counsel. I also reserve the right to notify media outlets regarding official inaction and public corruption.

Sincerely,
John Ray Alaniz

Advocate for Margot Alaniz (Mother)
📞 (903) 576-5060
✉ 2017johnrayalaniz@gmail.com

---

Notary Acknowledgment:
State of ___Texas_____
County of ___Montgomery___
On this _15_ day of ___July____, 20 _25_, before me, the undersigned notary public, personally appeared __John Ray Alaniz_____, proved to me through satisfactory evidence of identification to be the person whose name is signed on this document, and acknowledged to me that they signed it voluntarily for its stated purpose.
Signature of Notary Public: ___Haden King_____
Printed Name of Notary: __Haden King_____
My Commission Expires: _December 22, 2026___
Seal:

HADEN KING
Notary Public
STATE OF TEXAS
ID# 13411812-2
My Comm. Exp. Dec. 22, 2026